**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| LINDA BERG and ROBERT BERG, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 10 CV 6386 |
| v. | ) | |
| | ) | Hon. Charles R. Norgle |
| TARGET CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

In this diversity jurisdiction action, Plaintiffs Linda Berg ("Linda") and Robert Berg ("Robert") (collectively, "Plaintiffs") sue Defendant Target Corporation ("Defendant") for negligence and loss of consortium related to a slip-and-fall at one of Defendant's stores. Before the Court is Defendant's motion for summary judgment. For the following reasons, the motion is granted.

## I. BACKGROUND[1]

On the evening of August 22, 2008, Plaintiffs were shopping at Defendant's store in Vernon Hills, Illinois when Linda slipped on a green grape and fell to the floor. At the time of her slip-and-fall, she was simultaneously walking and looking at the signs in the store to locate the dog toys. Although Plaintiffs present evidence that there may have been two grapes on the floor, it is undisputed that Linda slipped on only one grape.

Defendant sells grapes packaged in bags or containers in the produce section of its store. The produce is located at the northwest corner of the store. Linda fell in the southeast section of the store, which is at the opposite side of the store as the groceries. The storage area for grapes is

---

[1] The Court takes the undisputed facts from the parties' Local Rule 56.1 statements and notes disputed facts, if any, within the text.

located a very short distance from where they are displayed in the northwest corner of the store. In addition, Defendant's employees are not permitted to eat on the sales floor. Therefore, the parties agree that "[t]he only conclusion that can be drawn from the evidence in the record is that someone other than a Target employee dropped the grape." Pls.' Local R. 56.1(b) Statement of Additional Facts Requiring the Denial of Def.'s Mot. for Summ. J. ¶ 13 (internal quotation marks and citation omitted).

The parties also agree that "[t]he area in which [Linda] fell has a white or an 'off white' tile floor and was very well-lit, she had no trouble seeing the floor in front of her, and her view of the floor where she fell was unobstructed." Def.'s Local R. 56.1(a) Statement of Undisputed Material Facts ¶ 12. No one saw any liquid or other debris, and the floor was otherwise clean, aside from the one or two grapes. On the evening of the incident customer traffic was light and Robert described the store as "extremely uncrowded." Id. ¶ 46.

No one reported seeing the grape on the floor prior to Linda's fall. None of Defendant's employees specifically recalled the last time that any of them had walked down the aisle where the fall occurred; however, the employees stated generally, that a walkthrough of that area is done every five, ten, or fifteen minutes. While Defendant's employee Asim Mohammad ("Mohammad") originally testified that he had walked down the aisle ten to fifteen minutes before the incident, he later changed his statement and said that although he typically walks down the aisle every ten to fifteen minutes, he did not remember whether he had done so immediately preceding the fall.

Linda stated that while she was looking at blankets she saw a "flash" of someone whom she believed to be an employee of Defendant at the far end of the aisle, approximately 100 to 125 feet away. Defendant disputes this fact and notes that Linda originally testified at her deposition

that the alleged employee was approximately 200 yards away from where she was standing, not 100 to 125 feet. Linda admits that she is not good at estimating distances. Furthermore, while Linda believes that the person she saw was an employee, she does not know whether the person was a man or a woman, what he or she was doing, or in which direction he or she was walking. In any event, the grape and the location of the fall occurred several minutes later about half-way down the aisle.

Defendant maintains that its "employees are trained to walk through the store, and if they see something on the floor, they are trained to clean it up." Id. ¶ 33. Although Plaintiffs dispute that Defendant's employees are adequately trained, they fail to support their denial with "specific references to the affidavits, parts of the record, and other supporting materials relied upon." N.D. Ill. L.R. 56.1(b)(3)(B). Nevertheless, Plaintiffs attach an expert report to their response motion which purports to support their position that Defendant's employees are not adequately trained to watch for spills. Among other observations, Plaintiffs' expert opines that Defendant's employees are inadequately trained based on his viewing of 2008 training videos. According to Plaintiffs' expert, the training videos "do not adequately train employees on proactively remediating hazards. The training videos merely provide training on how to clean up spills, but do not provide instruction to diligently monitor the floors for hazards. This falls below industry standards and the standard of care." Pls.' Resp. to Def.'s Mot. for Summ. J. Ex. 3, at p. 3. However, Plaintiffs' expert also notes that the deposition testimony and Defendant's own policies and procedures support the fact that Defendant's employees are trained to look for, and clean up slipping hazards. He states:

> The testimony suggests that the sole cause of the fall was the grape or grapes upon which Linda Berg slipped. The Target employees that have been deposed agreed that it is the employees' responsibility to look for slip and fall hazards, that a grape constitutes a slip and fall hazard, and that if the employee saw a grape, the

> employee should clean the area. Target's policies and procedures support each of these propositions. If the area in which there was a grape or grapes was cleaned, Linda Berg would not likely have slipped and fell.

Id. Defendant argues that the expert's opinions, based on "cherry-picked" facts, are not relevant, reliable, or admissible.

On August 6, 2010, Plaintiffs initiated the instant action in state court, alleging negligence and loss of consortium against Defendant. The action was removed to this Court on October 6, 2010, on the basis of diversity jurisdiction. On July 2, 2013, Defendant filed a motion for summary judgment. The motion is fully briefed and before the Court.

## II. DISCUSSION

### A. Standard of Decision

"Summary judgment is appropriate when 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Northfield Ins. Co. v. City of Waukegan, 701 F.3d 1124, 1128 (7th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Wells v. Coker, 707 F.3d 756, 760 (7th Cir. 2013) (internal quotation marks and citation omitted). The Court views the evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. Id. But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." Montgomery v. Am. Airlines, Inc., 626 F.3d 382, 389 (7th Cir. 2010). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (citations omitted); see also Argyropoulos v. City of Alton, 539 F.3d 724, 732 (7th Cir. 2008).

"Summary judgment is appropriate if the nonmoving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Majors v. Gen. Elec. Co., 714 F.3d 527, 532 (7th Cir. 2013) (quoting Celotex Corp., 477 U.S. at 322).

## B. Motion for Summary Judgment

The Court applies Illinois premises liability law in this diversity jurisdiction action. "In Illinois, businesses owe their invitees a duty to maintain the premises in a reasonably safe condition to avoid injuring them." Reid v. Kohl's Dep't Stores, Inc., 545 F.3d 479, 481 (7th Cir. 2008) (citations omitted). "Liability can be imposed when a business's invitee is injured by slipping on a foreign substance on its premises if the invitee establishes that the business had actual or constructive notice of the dangerous condition that caused the fall." Id. (citing Pavlik v. Wal-Mart Stores, Inc., 753 N.E.2d 1007, 1010 (Ill. App. Ct. 2001); Tomczak v. Planetsphere, Inc., 735 N.E.2d 662, 666 (Ill. App. Ct. 2000)).

Here, the parties agree that Defendant did not cause the grape or grapes to be on the floor, nor did Defendant have actual notice that a grape was on the floor. The only issue is whether Defendant had constructive notice of the grape or grapes, such that liability could be imposed. "Where constructive knowledge is alleged, '[o]f critical importance is whether the substance that caused the accident was there a length of time so that in the exercise of ordinary care its presence should have been discovered.'" Id. at 481-482 (quoting Torrez v. TGI Friday's, Inc., 509 F.3d 808, 811 (7th Cir. 2007)). In order to establish constructive notice, Plaintiffs must provide "evidence demonstrating the length of time that the substance was on the floor." Id. at 482.

Defendant contends that there are no material facts in dispute and, because Plaintiffs fail to present any evidence that establishes how long the grape was on the floor before Linda

stepped on it and fell, it is entitled to judgment as a matter of law. Plaintiffs argue that there is a genuine issue of material fact with respect to constructive notice.

### 1. The presence of more than one grape

First, Plaintiffs argue that the presence of two grapes as opposed to only one grape makes it more likely that an employee of Defendant should have seen the grape, thereby establishing constructive notice. Although Defendant maintains that only one grape was present, the Court accepts—for purposes of the instant motion—Plaintiffs' facts suggesting that there may have been two grapes on the floor. However, even assuming that there were two grapes on the floor instead of one, the Court finds this fact alone insufficient to establish constructive notice. The primary consideration for constructive notice is the length of time that the grapes were on the floor, not the number of grapes. In Reid, the Seventh Circuit found that the defendant did not have constructive notice of a spilled "'pink smoothie, milkshaky ice cream type thing,' as well as a cup, a lid, and a straw" which had been on the floor for approximately ten minutes because of the short length of time, the low customer traffic, and the frequent inspections done by the defendant's employees. Reid, 545 F.3d at 480. Such is the case here except that two grapes are even less conspicuous than a spilled cup of pink smoothie or milkshake. Accordingly, the Court rejects Plaintiffs' argument that the presence of two grapes establishes constructive notice.

### 2. Sighting of an employee

Second, Plaintiffs argue that they have presented direct evidence of constructive notice. While Plaintiffs do not recall seeing another customer, Linda recalls seeing a "flash" of an employee in the area before the incident. Based on that brief sighting, Plaintiffs deduce that the unidentified employee must have been walking in the direction of the grapes, eventually walking past the grapes, and thus the employee had constructive notice of the grapes because he or she

should have seen them on the floor. However, the inference Plaintiffs ask the Court to draw is too attenuated and not supported by the record. "[The Court's] favor toward the nonmoving party does not relieve it of the obligation to do more than simply show that there is some metaphysical doubt as to the material facts." Springer v. Durflinger, 518 F.3d 479, 484 (7th Cir. 2008) (internal quotation marks and citation omitted). Linda testified that she only saw a brief "flash" of a person whom she believed to be an employee, but that she did not know whether the person was a man or a woman, how far away the person was, or in which direction the person was walking to or from. "'The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. . . . Speculation will not suffice.'" Id. (quoting Borcky v. Maytag Corp., 248 F.3d 691, 695 (7th Cir. 2001)). The Court finds that Linda's sighting of an employee in the area is too speculative to establish constructive notice.

### 3. The length of time the grape was on the floor

Next, Plaintiffs argue that there are facts in the record establishing that the grapes were on the floor a minimum of ten to fifteen minutes which is a sufficient amount of time to show that Defendant had constructive notice of the spill. In support of their position, Plaintiffs rely on the deposition testimonies of Defendant's employees who largely agreed that an employee would typically traverse that area every ten to fifteen minutes. In addition, Linda stated that in the seven to eight minutes that she and her husband walked down the main back aisle, she did not notice any other customers; therefore, Plaintiffs conclude that the grape must have been dropped by a customer sometime before they entered the aisle. Plaintiffs also rely on a statement of Defendant's employee, Mohammad, who at one point in his deposition testified that he had walked down the subject aisle approximately ten or fifteen minutes before the incident. Defendant disputes this fact and states that Mohammad later clarified that although he usually

walks through that aisle every ten to fifteen minutes, he could not recall if he had done so that night. Viewed in a light most favorable to Plaintiffs however, the Court infers that an employee walked through the area approximately ten to fifteen minutes prior to Linda's fall. Thus, the grapes were on the floor at most, ten to fifteen minutes before the incident.

Plaintiffs argue that they have presented sufficient evidence of constructive notice based on the amount of time that the grapes were likely on the floor, as well as Defendant's allegedly inadequate employee training with respect to monitoring the premises for spills. Plaintiffs rely on the Seventh Circuit's decision in Peterson v. Wal-Mart Stores, Inc., where the court found that, while "the duty of inspection and clean up, does not require continuous patrolling of the aisles . . . . it may require, in self-service stores where customer traffic is heavy and the probability of a slip and fall therefore high . . . frequent and careful patrolling." 241 F.3d 603, 604-605 (7th Cir. 2001) (internal citations omitted). Plaintiffs note that, although many courts have found that ten minutes is insufficient, Peterson found that there is no rule stating that "ten minutes is too short a time to establish a storeowner's negligence in failing to have noticed and corrected a dangerous condition caused by a customer." Id. at 605. Instead, courts look to the circumstances of the particular case to determine if the length of time gave rise to notice." Reid, 545 F.3d at 483 (citation omitted).

The circumstances courts consider in relation to the length of time include the level of customer traffic and a store's internal procedures for monitoring spills. Id. Here, it is undisputed that on the night of the incident, the store was not crowded and customer traffic was low. "Were customer traffic heavy, the onus would have been on [Defendant] to provide frequent and careful patrolling. The store was almost empty, so the duty to inspect the premises accordingly decreased." Id. Nevertheless, Plaintiffs argue that constructive notice should be imputed to

Defendant because their expert opines that Defendant inadequately trains its employees to monitor for spills and other hazards.

Plaintiffs' expert criticizes "the manner in which [Defendant] trains its employees to monitor for and clean up foreign substances on the floor." Mem. of Law in Supp. of Pls.' Resp. to the Def,'s Mot. for Summ. J., at 8. According to the report relied upon by Plaintiffs however, the expert bases his opinion solely on 2008 training videos, which are only a fraction of the material he claims to have reviewed. The other material included: (1) eight different depositions from all relevant parties, including several store employees; (2) the store layout; (3) guest incident reports from Target employees; (4) Vernon Hills Incident Report; (5) surveillance video of Plaintiffs entering the store; (6) store policies and procedures; and (7) the Complaint and Answer filed in the instant matter. Furthermore, the expert admits that, although he finds the training videos inadequate, the deposition testimony and Defendant's own policies and procedures support Defendant's position that its employees are trained to look out for and clean up spills. Specifically, he states:

> The testimony suggests that the sole cause of the fall was the grape or grapes upon which Linda Berg slipped. The Target employees that have been deposed agreed that it is the employees' responsibility to look for slip and fall hazards, that a grape constitutes a slip and fall hazard, and that if the employee saw a grape, the employee should clean the area. Target's policies and procedures support each of these propositions.

Pls.' Resp. to Def.'s Mot. for Summ. J. Ex. 3, at p. 3. Despite his admission, the expert concludes that Defendant's employees are not adequately trained. While the Court must view all evidence in a light most favorable to Plaintiffs, it need only accept <u>reasonable</u> inferences and "the nonmovant cannot rely on a mere 'bottom line' conclusion from an opinion witness." <u>Czyszczon v. Universal Lighting Tech., Inc.</u>, 880 F. Supp. 2d 890, 893 (N.D. Ill. 2012) (citing <u>Minix v. Canarecci</u>, 597 F.3d 824, 835 (7th Cir. 2010)). "[A]n opinion witness may not offer an

ultimate conclusion without explanation or one that is unsupported by his or her proceeding testimony. If the witness' testimony supports one conclusion but he or she nevertheless reaches the opposite final determination, it cannot be considered admissible under Minix." Id. Because the ultimate opinion of Plaintiffs' expert is contrary to his own findings, it is unreliable and inadmissible for consideration on summary judgment. The undisputed evidence from Defendant's employees working the night of the incident establishes that Defendant did have an "internal procedure for monitoring for spills and other dangerous conditions." Reid, 545 F.3d at 483. Considering these conditions as a whole, ten or fifteen minutes was not enough time to give Defendant constructive notice of the grapes. Id. "By failing to meet [their] burden in establishing constructive notice, [Plaintiffs'] claim must fail." Id. Accordingly, summary judgment in favor of Defendant is appropriate.

### III. CONCLUSION

For the foregoing reasons, summary judgment is granted in favor of Defendant.

IT IS SO ORDERED.


ENTER:

CHARLES RONALD NORGLE, Judge
United States District Court

DATE: November 18, 2013

10